IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **THE HERTZ CORPORATION; ESIS, INC.; ACE AMERICAN INSURANCE COMPANY, and ESIS, Inc.**,<br><br>Plaintiffs and Counterclaim-Defendants,<br><br>v.<br><br>**DAVID KATZUNG, both individually and as assignee for TIMMY PHILLIPS**,<br><br>Defendant and Counterclaim-Plaintiff. | Case No. 3:20-cv-269-SI<br><br>**OPINION AND ORDER** |

Alexander H. Hill, BULLIVANT HOUSER BAILEY PC, One SW Columbia Street, Suite 800, Portland, OR 97204; and Wilhelm Dingler, BULLIVANT HOUSER BAILEY PC, 925 Fourth Avenue, Suite 3800, Seattle, WA 98104. Of Attorneys for The Hertz Corporation, ACE American Insurance Company, and ESIS, Inc.

Thomas E. Hojem, CARON, COLVEN, ROBISON & SHAFTON, P.S., 900 Washington Street, Suite 1000, Vancouver, WA 98660; and Sean W. Carney, PARSONS FARNELL & GRIEN, LLP, 1030 SW Morrison Street, Portland, OR 97205. Of Attorneys for David Katzung and Timmy Phillips.

**Michael H. Simon, District Judge.**

Before the Court are two motions to compel filed by Defendant and Counterclaim Plaintiff David Katzung (Katzung) and a motion for protective order filed by Plaintiffs and Counterclaim Defendants The Hertz Corporation (Hertz), ACE American Insurance Company (ACE), and ESIS, Inc. (ESIS). (The Court collectively refers to Hertz, ACE, and ESIS as

PAGE 1 – OPINION AND ORDER

"Plaintiffs.") The motions relate to an attorney who was initially retained by an insurer to represent both the insurer and a putative insured. The attorney began to perform work for the benefit of both and then discovered a conflict of interest between the insurer and the insured. The primary question presented is whether the attorney had sufficiently begun representing the insured to entitle the insured to see otherwise privileged communications between the attorney and the insurer relating to this tripartite representation, notwithstanding the fact that the attorney never communicated with the insured and the insured never even became aware of the attorney's existence or representation of the insured. For the reasons explained below, the Court grants in part and denies in part the pending motions.

## BACKGROUND

On May 30, 2017, Timmy Phillips (Phillips) rented a car from Hertz in Portland, Oregon. At that time, Hertz had insurance coverage as required by the minimum financial responsibility (MFR) obligations for passenger motor vehicles under Oregon law. Hertz purchased this insurance (the MFR Policy) from ACE, and Hertz and ACE jointly contracted with ESIS to adjust claims under the MFR Policy. Under the terms of the rental agreement between Phillips and Hertz, Phillips had the option of purchasing from Hertz liability insurance coverage above the MFR obligations imposed by Oregon law, but Phillips declined. He also affirmatively represented to Hertz during the rental process that he had his own insurance coverage from Kemper Preferred Insurance (Kemper) for liability and damage to persons or vehicles.

Under the terms of the rental agreement between Phillips and Hertz, Phillips was authorized to rent the vehicle for a period up to 30 days. Neither Phillips nor Kemper sought any extension of this thirty-day rental period, which ended on June 29, 2017. According to Hertz, after that date Phillips became an unauthorized driver of the Hertz vehicle. Hertz also contends that at the end of the authorized rental period, the insurance coverage provided to Phillips under

the MFR Policy expired. On July 18, 2017, Phillips, while still in possession of the Hertz rental car, was involved in an automobile accident with a car driven by Katzung, a Washington resident. In that accident, allegedly caused by Phillips, Katzung suffered property damage to his car and personal injuries. The accident occurred in the state of Washington.

As noted, Hertz contends that, at the time of the accident, Phillips was an unauthorized driver of the Hertz rental car. Hertz further contends that under the rental agreement between Phillips and Hertz, Phillips had an affirmative duty to notify Hertz of the accident. According to Hertz, Phillips did not do so. Hertz contends that it made multiple unsuccessful attempts to contact Phillips in the latter part of July 2017, both by telephone and by written correspondence. Phillips, however, contends that he timely notified the Hertz office at the Portland International Airport about the accident immediately after it occurred and again notified Hertz on September 20, 2017. Katzung alleges that on September 25, 2017, Omar Rowe, a representative of ESIS, advised Katzung that Hertz and ACE had retained ESIS to investigate and adjust Katzung's property damage and bodily injury claims arising from the accident. Rowe told Katzung that ESIS had assigned claim number 22201737249 to this matter.

On November 17, 2017, ESIS prepared a release for Katzung's property damage claim and settled that claim. On three occasions thereafter, Katzung contacted ESIS regarding Katzung's bodily injury claim against Phillips. On May 2, 2018, the ESIS representative, Rowe, sent a letter to Katzung's counsel, stating that Phillips had not purchased any additional liability coverage with Hertz, that any insurance that may provide coverage for the "renter/driver would

PAGE 3 – OPINION AND ORDER

be primary," and if there were no primary coverage, then the available coverage would be the minimum required under Oregon law, which was "25/50/20." ECF 50-2 at 1.[1]

On July 11, 2018, Katzung's counsel advised ESIS that Kemper had denied coverage for the accident because the Kemper policy issued to Phillips lapsed on May 30, 2017 for failure to pay the premium. Thus, Phillips did not have any primary coverage. Katzung, through counsel, then demanded from ESIS the policy limits of $25,000 within 30 days. Plaintiffs did not respond to Katzung's demand for $25,000.

On August 20, 2018, Katzung filed a lawsuit against Phillips in state court in Clark County, Washington. Plaintiffs contend that the affidavit of service states that a summons and complaint were served on Phillips on August 27, 2018 "in Clark County, State of Washington" at the "Columbia River Correctional Institute Legal Library." The Columbia River Correction Institution, however, is in Portland, Oregon. Plaintiffs also contend that Katzung did not secure a commission or other authorization to serve the Washington state court summons and complaint on Phillips in Oregon and thus service on Phillips was defective. Katzung, however, alleges that he properly served Phillips with the summons and complaint.

Plaintiffs also contend that Phillips did not "tender" the state court complaint to Hertz, ACE, or ESIS or ever request a defense or other assistance from Plaintiffs. Katzung, however, asserts that on September 4, 2018, his counsel provided Plaintiffs, through ESIS, with copies of the summons and complaint that were filed against Phillips. Phillips never responded to Katzung's lawsuit, and Plaintiffs took no action to defend Phillips in the lawsuit.

---

[1] Under Oregon law, an automobile insurance policy must cover at least $25,000 for bodily injury or death to one person arising from one accident, $50,000 for bodily injury or death for two or more persons in any one accident, and $20,000 for property damage from one accident. Or. Rev. Stat. § 806.070(c)(2).

On December 14, 2018, the Washington state court entered a default judgment against Phillips in favor of Katzung in the amount of $500,000. On January 30, 2019, ESIS requested from Katzung a copy of the default judgment, which Katzung's counsel promptly provided. Plaintiffs made no attempt to set aside the default judgment. On February 1, 2019, ESIS tendered $25,000 to Katzung, along with a release of Katzung's bodily injury claim. In the release, Plaintiffs stated that they were making an offer "on behalf of Timmy Phillips." ECF 46-3. On March 11, 2019, Katzung declined Plaintiffs' offer and did not sign the release. Instead, Katzung demanded $500,000 from Plaintiffs for his bodily injury claim, which Plaintiffs rejected.

On March 22, 2019, an ESIS adjuster sent an email to Tom Hutchinson, an attorney with the law firm of Bullivant Houser Bailey PC (Bullivant). The subject line of that email reads, in part: "NEW REFERRAL Case # 18-2-01687-1 David Katzung v. Timmy Phillips." The body of the email includes the phrase, "Defense for Timmy Phillips & Hertz." ECF 46-4.[2] On March 26, 2019, a different attorney at the Bullivant firm, Wilhelm Dingler, sent an email to ESIS which reads, in part: "As we discussed, we are working on a CR 60 motion to set aside the default. In my preliminary looking earlier today, I found what might be helpful case law." ECF 46-5.

On April 15, 2019, ESIS wrote to Dingler, stating:

> No Contact was ever made with the renter Mr. Phillips. I do not have a copy of the actual summons, I provided you with everything contained in the file. I have never been able to verify his address. We may want to send PI to locate him.

---

[2] Plaintiffs produced these documents, among others, to Katzung's counsel during discovery in this case. In December 2020, Plaintiffs' counsel informed Katzung's counsel that several attorney-client privileged documents, including these, were inadvertently produced. Plaintiffs' counsel asked Katzung's counsel to return or destroy all putatively privileged documents, but Katzung's counsel declined, asserting that Phillips, and by extension his assignee Katzung, has a right to see these documents under the tripartite representation arrangement. In addition, Plaintiffs' counsel produced documents that were partially redacted, and Katzung's counsel similarly asserts that Katzung has a right to see the unredacted portions of these documents.

PAGE 5 – OPINION AND ORDER

ECF 46-6 at 2. Dingler responded to ESIS: "Let's think about whether and to what extent we want to involve Mr. Phillips. *Technically, he is my client* and I will be making representations to the Court on that basis." *Id*. (emphasis added).

On April 25, 2019, Dingler again wrote to ESIS, stating, in relevant part:

> I am thinking about adding an argument in our motion related to the number of cars and accidents Hertz's fleet encounters on a given day/week/month to demonstrate how sometimes matters can fall through the cracks by virtue of sheer volume and nationwide breadth. This will form the basis for another aspect of 'excusable neglect' (a basis for setting aside default under the rule). . . . I recognize that the claims guy dropped the ball BUT, at the end of the day, it is Hertz and Mr. Phillips who are 'hurt' by the harshness of the default.

ECF 46-7. No one ever filed a motion to vacate Katzung's default judgment against Phillps.

According to Dingler, he and the Bullivant law firm were retained by ESIS and ACE after they received notice of Katzung's claims against Phillips. ECF 52 at ¶ 2. Dingler adds:

> I initially began to investigate Katzung's claims under the assumption of Oregon's tripartite representation (under which I would represent both insurer and Phillips with the presumed common goal of defeating Katzung's claims). Although at one point I told ESIS, the third-party claim administrator for ACE, that Phillips was technically my client, I later discovered a coverage conflict between Phillips and Plaintiffs. Specifically, I discovered that at the time of the underlying collision, Phillips was an unauthorized user of the rental car, and therefore no coverage applied. At that point, my representation consisted only of representing Plaintiffs' interest in conflict with Phillips. Moreover, my comment that Phillips was "technically" my client was made during the inquiry phase of the issues. At that time, I was operating under the direction of ESIS to move to set aside the default until I discovered I had no standing to do so and that Phillips violated the rental agreement so there would be no coverage other than, at most, the state mandated Financial Responsibility Law amount.

*Id*. Dingler also states:

> *I never made contact with Phillips*. I never obtained, nor did I attempt to obtain, a letter of engagement with Phillips. Phillips

PAGE 6 – OPINION AND ORDER

> never contacted me or any member of my firm. Phillips never
> asked me to represent him.

*Id*. at ¶ 3 (emphasis added). Dingler further explains:

> *Not only did I not have communications with Phillips, my clients ESIS and ACE, have never had any communications from Phillips*; despite multiple attempts and requests for him to communicate with them which were sent to Phillips' address on the Hertz rental agreement as well as his last known address(es). Phillips never tendered, asked, or otherwise requested that Plaintiffs defend him against Katzung's claims.

*Id*. at ¶ 4 (emphasis added).

Plaintiffs filed this declaratory judgment action on February 18, 2020, naming both Phillips and Katzung as Defendants. ECF 1. As alleged by Katzung, on April 24, 2020, Phillips assigned to Katzung all rights that Phillips may have against Plaintiffs or any other insurers related to the accident or Katzung's lawsuit against Phillips, in exchange for a limited and conditional covenant not to execute on the default judgment except with respect to Phillips' insurance assets or claims against Plaintiffs. ECF 12 at ¶ 27. Based on this allegation, the Court granted Katzung's motion (ECF 34) to have Katzung, as the assignee of Phillips, substituted for Phillips as the real party in interest. ECF 39. Katzung, as Phillips' assignee, asserts counterclaims against Plaintiffs, alleging breach of contract, breach of fiduciary duty, and negligence. Katzung seeks money damages against Plaintiffs of at least $694,050.

## DISCUSSION

**A. Katzung's Third Motion to Compel and Plaintiffs' Motion for Protective Order**

In his Third Motion to Compel, Katzung seeks access to Plaintiffs' communications with the attorneys at the Bullivant law firm whom Katzung contends Plaintiffs retained to represent Phillips and Plaintiffs jointly. Katzung argues that any applicable attorney-client privilege relating to this tripartite representation can be waived by Phillips and that Katzung, as Phillips'

assignee, can (and does) waive that privilege on behalf of Phillips. Plaintiffs respond that any attorney they retained represented only Plaintiffs and not Phillips and Plaintiffs jointly. Plaintiffs resist disclosing otherwise privileged communications and argue that neither Phillips nor Katzung has the authority to waive Plaintiffs' attorney-client privilege.

Katzung seeks an order that: (1) finds that Katzung is entitled to all documents and facts related to Plaintiffs' defense of Phillips; (2) permits Katzung to retain and use the unredacted documents that Plaintiffs assert are privileged and inadvertently produced to Katzung; (3) compels Plaintiffs to produce unredacted copies of the redacted documents for *in camera* review by the Court; and (4) compels Plaintiffs to produce or log any document that relates to Plaintiffs' handling of Katzung's claims against Phillips, including all documents in possession, custody, or control of the Bullivant law firm and including any documents related to Plaintiffs' decision to "reverse" its coverage determination and "abandon" Plaintiffs' defense of Phillips. In Plaintiffs' motion for protective order (ECF 51), Plaintiffs ask the Court to prohibit the disclosure, discovery, or inquiry into privileged communications and materials between Plaintiffs and their attorneys. Plaintiffs also ask the Court to require that Katzung return the inadvertently produced privileged materials or confirm its destruction.

In support of his Third Motion to Compel, Katzung's primary argument is that "because the documents are related to the defense of Mr. Phillips, the attorney-client privilege belonged to Mr. Phillips, and because Mr. Phillips assigned all rights against the Plaintiffs to Katzung, that privilege now belongs to Latzung." ECF 45 ay 2. The Court agrees with Katzung that, as the assignee of Phillips, Katzung has the right to waive any attorney-client privilege that Phillips has the right to waive. In *Athridge v. Aetna Casualty & Surety Co.*, 184 F.R.D. 181 (D.D.C. 1998), the court explained that "when the insured assigns whatever claim she had to the person who

sued her in the first place . . . the insurance company cannot claim an attorney-client privilege against the insured's assignee, any more than it could claim it against the insured." 184 F.R.D. at 186-87. Plaintiffs do not appear to dispute this point.

The Court also agrees with Katzung that in a tripartite representation relationship in which an insurer retains legal counsel to represent both an insured and the insurer, each client is entitled to see the attorney's communications with the other client relating to the joint representation. *See, e.g.*, *Geico Indem. Co. v. Goldstein*, 2016 WL 10860965, at *4 (D. Nev. May 23, 2016) ("[The insurer] does not explain what communications it could have with [defense counsel] that would not have been or should not have been shared with its insured. Of course, the law firm could not ethically protect [the insurer's] interest over the interests of its co-client, [the insured]. The court has no idea, and [the insurer] has not explained, what communications could exist in the files of [defense counsel] that would not, or should not, have been shared with its insured."); *McGrath v. Everest Nat'l Ins. Co.*, 2009 WL 1325405, at *2 (N.D. Ind. May 13, 2009), amended, 2009 WL 2508216 (N.D. Ind. Aug. 13, 2009) ("[N]o attorney-client privilege can be asserted against an insured or an assignee of an insured in its action against an insurance company with respect to materials prepared as part of the insured's defense in the underlying action."); *Athridge*, 184 F.R.D. at 186-87 ("If one lawyer represents two persons or entities, neither can claim an attorney-client privilege when, having fallen out, one sues the other and demands to know what the other said to the lawyer when she was representing both of them. The latter principle has been applied with equal force when the insured assigns whatever claim she had to the person who sued her in the first place. In that situation, the insurance company cannot claim an attorney-client privilege against the insured's

assignee, any more than it could claim it against the insured."). Plaintiffs do not appear to dispute this point.

Instead, Plaintiffs argue that Phillips never actually became a client of the Bullivant law firm, notwithstanding that an ESIS adjuster sent an email to that law firm that included the phrase "Defense for Timmy Phillips & Hertz" and that an attorney at that law firm wrote to ESIS that "[t]echnically, [Phillips] is my client." According to Plaintiffs, neither attorney Dingler nor anyone else at the Bullivant law firm, nor anyone from either ESIS or ACE, had any communications with Phillips. Because Katzung does not present any facts to the contrary, the Court, for purposes of the pending motions, accepts Plaintiffs' factual premise and finds that no one from the Bullivant law firm and no one associated with ESIS or ACE ever had any communications with Phillips regarding the accident or legal representation of Phillips.[3]

Thus, the pending motions present a question about whether an attorney-client relationship has been formed under the following specific, and somewhat unique, facts: (a) an attorney is hired by an insurer initially to represent both the insurer and an insured; (b) the attorney begins to perform work for the benefit of both; (c) the attorney soon discovers a conflict of interest between the insurer and the insured; and (d) neither the attorney nor the insurer ever communicated with the insured and the insured never even became aware of the attorney's existence or representation of the insured. The question is whether, under these circumstances, the attorney has sufficiently begun representing the insured to entitle the insured to see otherwise

---

[3] Katzung may, if he wishes, take discovery from Plaintiffs, including document discovery and deposition discovery under Rule 30(b)(6) of the Federal Rules of Civil Procedure to confirm whether Plaintiffs' factual representations on this point are accurate. Katzung, of course, also may submit a declaration from Phillips or take the deposition of Phillips on this issue. If Katzung later obtains and presents information contrary to Plaintiffs' representations on this point, Katzung has leave to seek reconsideration of this Opinion and Order. The fact that Phillips may have contacted the Hertz rental office shortly after the accident to report the accident is not inconsistent with Plaintiffs' assertions on the issue of legal representation.

PAGE 10 – OPINION AND ORDER

privileged communications between the attorney and the insurer relating to this tripartite representation. Essentially, this question asks when an attorney-client relationship begins and whether there can be such a relationship when the putative client is unaware of the existence of that relationship. A predicate question, however, is which state's law governs.

Subject matter jurisdiction in this case is based on diversity of citizenship. The forum, of course, is in Oregon, but the parties have not yet taken a position on whether Oregon law provides the relevant rule of decision regarding Katzung's counterclaims. Phillips rented the vehicle from Hertz in Oregon and, according to Plaintiffs, was served with Katzung's summons and complaint in Oregon. The accident, however, occurred in Washington, and Katzung filed his state court lawsuit and received his default judgment against Phillips in Washington. Unless and until the parties show otherwise, the Court will assume that Oregon law provides the rule of decision regarding Katzung's counterclaims. Under Rule 501 of the Federal Rules of Evidence, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." *See also Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995) ("Because this is a diversity action, we apply the substantive law of the forum state, Alaska. Where the state supreme court has not ruled on a question in issue, 'we look to other state-court decisions, well-reasoned decisions from other jurisdictions, and any other available authority to determine the applicable state law.'" (quoting *Burns v. Int'l Ins. Co.*, 929 F.2d 1422, 1424 (9th Cir.1991)). Thus, the Court will look to Oregon law to decide questions of attorney-client privilege in this case, including whether an attorney-client relationship was ever formed between the Bullivant law firm and Phillips.

Plaintiffs argue that to establish an attorney-client relationship under Oregon law, including a tripartite relationship,[4] Katzung must demonstrate that Phillips reasonably believed under the circumstances that Phillips was entitled to look to Dingler and the Bullivant law firm for legal advice. *See In re Spencer*, 335 Or. 71, 84 (2002) ("The modern trend in Oregon and elsewhere is to find the existence of an attorney-client relationship wherever the would-be client reasonably believes under the circumstances the client is entitled to look to the lawyer for advice."). The Restatement (Third) of the Law Governing Lawyers § 14 (2000) similarly provides:

> A relationship of client and lawyer arises when:
>
> (1)  *a person manifests to a lawyer* the person's intent that the lawyer provide legal services for the person; and either
>
> > (a) the lawyer manifests to the person consent to do so; or
> >
> > (b) the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services; or
>
> (2) a tribunal with power to do so appoints the lawyer to provide the services.

*Id*. (emphasis added). Under *Spencer*, Phillips must have reasonably believed that he is entitled to look to the Bullivant firm for advice. Similarly, under the Restatement, Phillips must have manifested to a lawyer at the Bullivant law firm Phillips's intent that the lawyer provide legal services for him.

---

[4] Oregon appears to recognize a tripartite attorney-client relationship among an insurer, its insured, and legal counsel retained by the insurer to represent both. *See generally* Marilyn Lindgren Cohen, *The Tripartite Relationship; Is There Harmony Among Insurer, Insured and Defense Counsel?*, Or. St. B. Bull., August/September 1992, at 33.

If Phillips never knew that Plaintiffs had retained a lawyer for him and never had any communications with that lawyer, he could not have reasonably believed that he is entitled to look to the Bullivant firm for advice and could not have reasonably manifested to any lawyer (or even any agent of a lawyer) his intent that the lawyer provide legal services for him. Thus, no attorney-client relationship was ever formed between Phillips and any attorney at the Bullivant law firm, notwithstanding anything said (or even intended) by anyone at that firm or at ESIS. If no attorney-client relationship was ever formed between Phillips and the Bullivant law firm, then Phillips has no attorney-client privilege to waive. Thus, even assuming that Katzung has the authority to waive any privilege that Phillips may have, Phillips has none. This leaves the only relevant attorney-client relationship (and the only attorney-client privilege) one that exists solely between Plaintiffs and the Bullivant law firm. And Katzung has no legal authority to waive that privilege. This analysis is sufficient to deny Katzung's first, second, and third requested forms of relief in his Third Motion to Compel.

In his fourth requested form of relief, however, Katzung seeks an order that compels Plaintiffs to produce or log any document that relates to the Plaintiffs' handling of Katzung's claims against Phillips, including all documents in possession, custody, or control of the Bullivant law firm and including any documents related to Plaintiffs' decision to "reverse" its coverage determination and "abandon" Plaintiffs' defense of Phillips. The Federal Rules of Civil Procedure already require Plaintiffs to provide a privilege log. Rule 26(b)(5)(A) provides:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> > (i) expressly make the claim; and
> >
> > (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a

> manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A). Accordingly, the Court grants Katzung's request for a privilege log.[5]

Finally, Plaintiffs cross move for a protective order. Based on the Court's ruling on Katzung's Third Motion to Compel, such an order is unnecessary at this time. In addition, any further rulings on this issue should wait until after Plaintiffs have provided a privilege log and answered Katzung's interrogatories (as discussed below), and Katzung has had a reasonable opportunity to determine whether a further motion to compel is appropriate.

## B. Katzung's Fourth Motion to Compel

In his Fourth Motion to Compel (ECF 49), Katzung first seeks an order compelling ACE to answer Interrogatory Nos. 7, 8, 9, 10, 11, 12, 14, 15, 16, 18, 19, and 20. Katzung also seeks leave to propound additional interrogatories to ACE, beyond the presumptive limit of 25 established under Rule 33(a)(1) of the Federal Rules of Civil Procedure.

In these twelve interrogatories, Katzung seeks: (1) a description of the process that was used to evaluate any request for coverage regarding the accident and the identity of all persons responsible for adopting those procedures (Int. No. 7); (2) the identity all employees, consultants, experts, and attorneys used to assist in investigating, analyzing, handling or responding to the accident or underlying lawsuit, or default judgment (Int. No. 8); (3) a description of the work perform by each identified person (Int. No. 9); (4) the amount of loss reserves, if any, set aside regarding the underlying lawsuit as of October 30, 2018 (Int. No. 10); (5) the amount of loss

---

[5] After a privilege log has been provided by Plaintiffs, Katzung has leave to file a further motion to compel, if appropriate. For example, if the Bullivant law firm was acting as a *de facto* claims handler, Katzung may be entitled to additional discovery, especially if Washington law applies. *See Semeryanov v. Country Mut. Ins. Co.*, 2015 WL 13681816 (D. Or. May 18, 2015); *Cedell v. Farmers Ins. Co. of Wash.*, 295 P.3d 239 (Wash. 2013); *see generally Stewart Title Guar. Co. v. Credit Suisse*, 2013 WL 1385264 (D Idaho Apr. 3, 2013). If Oregon law applies, however, additional briefing on this point likely will be needed.

reserves, if any, currently being set aside regarding the underlying lawsuit or default judgment (Int. No. 11); (6) the investigation and information gathering process utilized in reaching the decision to defend Phillips in the underlying lawsuit (Int. No. 12); (7) the reason or reasons for Plaintiffs' failure to respond to Katzung's July 11, 2018 settlement demand for $25,000 (Int. No. 14); (8) the reason or reasons for Plaintiffs' failure to move to vacate the default judgment against Phillips (Int. No. 15); (9) the reason or reasons for Plaintiffs' refusal to pay the default judgment against Phillips (Int. No. 16); (10) the identification of all documents collected, considered, or reviewed in Plaintiffs' factual investigation (Int. No. 18); (11) all facts that serve as the basis for Plaintiffs' assertion that Plaintiffs need not fund the entire default judgment (Int. No. 19); and (12) the identity of every person who participated in Plaintiffs' decision not to fund the entire default judgment (Int. No. 20).

Except for Interrogatory No. 19, Plaintiffs' objections to the other interrogatories are not well taken. Accordingly, Plaintiffs shall provide answers to Interrogatory Nos. 7, 8, 9, 10, 11, 12, 14, 15, 16, 18, and 20. Plaintiffs' objection to Interrogatory No. 19, however, is sustained. This form of contention interrogatory is prohibited under the local rules of this district. *See* LR 33-1(d).

Finally, Katzung moves for leave to submit additional interrogatories. He has not, however, shown that additional interrogatories are needed or reasonable. This request is denied.

## CONCLUSION

The Court DENIES IN PART AND GRANTS IN PART Katzung's Third Motion to Compel Discovery (ECF 45); Plaintiffs shall provide a privilege log. The Court DENIES Plaintiffs' cross motion for protective order (ECF 51). Finally, the Court GRANTS IN PART AND DENIES IN PART Katzung's Fourth Motion to Compel Discovery (ECF 49); Plaintiffs

reserves, if any, currently being set aside regarding the underlying lawsuit or default judgment (Int. No. 11); (6) the investigation and information gathering process utilized in reaching the decision to defend Phillips in the underlying lawsuit (Int. No. 12); (7) the reason or reasons for Plaintiffs' failure to respond to Katzung's July 11, 2018 settlement demand for $25,000 (Int. No. 14); (8) the reason or reasons for Plaintiffs' failure to move to vacate the default judgment against Phillips (Int. No. 15); (9) the reason or reasons for Plaintiffs' refusal to pay the default judgment against Phillips (Int. No. 16); (10) the identification of all documents collected, considered, or reviewed in Plaintiffs' factual investigation (Int. No. 18); (11) all facts that serve as the basis for Plaintiffs' assertion that Plaintiffs need not fund the entire default judgment (Int. No. 19); and (12) the identity of every person who participated in Plaintiffs' decision not to fund the entire default judgment (Int. No. 20).

Except for Interrogatory No. 19, Plaintiffs' objections to the other interrogatories are not well taken. Accordingly, Plaintiffs shall provide answers to Interrogatory Nos. 7, 8, 9, 10, 11, 12, 14, 15, 16, 18, and 20. Plaintiffs' objection to Interrogatory No. 19, however, is sustained. This form of contention interrogatory is prohibited under the local rules of this district. *See* LR 33-1(d).

Finally, Katzung moves for leave to submit additional interrogatories. He has not, however, shown that additional interrogatories are needed or reasonable. This request is denied.

## CONCLUSION

The Court DENIES IN PART AND GRANTS IN PART Katzung's Third Motion to Compel Discovery (ECF 45); Plaintiffs shall provide a privilege log. The Court DENIES Plaintiffs' cross motion for protective order (ECF 51). Finally, the Court GRANTS IN PART AND DENIES IN PART Katzung's Fourth Motion to Compel Discovery (ECF 49); Plaintiffs

shall provide answers to Interrogatory Nos. 7, 8, 9, 10, 11, 12, 14, 15, 16, 18, and 20, but need not answer Interrogatory No. 19.

**IT IS SO ORDERED.**

DATED this 29th day of March, 2021.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge
